IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| BRIAN DAVISON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:16-cv-0180 |
| ) | |
| JAMES PLOWMAN, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Plaintiff Brian Davison ("Davison") alleges that the Commonwealth's Attorney for Loudoun County, Virginia violated his First Amendment rights by deleting his comment from a local government Facebook page and blocking him from posting additional comments. Davison seeks injunctive relief undeleting his comment, restoring his ability to post new comments, and enjoining Defendant from banning Davison in the future. Defendant moves to dismiss this case as moot because he has voluntarily provided the relief Davison seeks. For the following reasons, the Court will deny the motion to dismiss.

**I.     Background**

Defendant James Plowman ("Plowman") is the Commonwealth's Attorney for Loudoun County, Virginia. (Compl. ¶ 3.) Part of Plowman's job is to supervise public relations

1

regarding the Commonwealth's Attorney Office (the "CA"), including overseeing a profile page about the CA on the social networking website Facebook.[1] (Compl. ¶¶ 3-4.) The CA's Facebook page falls under the umbrella of Loudoun County government websites intended to "present matters of public interest in Loudoun County." (Compl. ¶ 4; Social Media Policy [Dkt. 1-1].) Loudoun County's Social Media Policy encourages public participation on government websites, but imposes some rules on the scope of that participation. (Social Media Policy.) The Policy notes that online comments are moderated and permits Loudoun officials to delete comments that are "clearly off topic," "contain vulgar language, personal attacks of any kind, or offensive comments that target or disparage any ethnic, racial or religious group," and other prohibited comments.[2]

On December 2, 2015, the CA began a media initiative on its Facebook page called "Understanding the Law." (Compl.

---

[1] "Facebook is an online social network where members develop personalized web profiles to interact and share information with other members." *Bland v. Roberts*, 730 F.3d 368, 385 (4th Cir. 2013).

[2] The Policy also reserves the right to delete comments that "are spam or include links to other sites; are clearly off topic; advocate illegal activity; promote particular services, products, or political candidates or organizations; infringe on copyrights or trademarks; or may tend to compromise the safety or security of the public or public systems." (Social Media Policy.)

2

¶¶ 5, 8; December 2 Post [Dkt. 1-2] at 1.)  The goal of the initiative was to "increase the public's understanding of the criminal justice process" by posting published articles online, beginning with an article about special prosecutors.  (December 2 Post.)  About two weeks later, Davison posted a comment on the CA's Facebook page describing a legal altercation he had with members of Loudoun County Public Schools ("LCPS").  (Compl. ¶ 9.)  Davison wrote that LCPS failed to respond to his Freedom of Information Act request and then LCPS "committed perjury by claiming under oath" that it did respond.  (December 2 Post.)  Davison wrote that there was "documented proof that perjury occurred" and asked why Plowman had not assigned a special prosecutor to investigate.  (*Id.*)  Davison criticized Plowman's decision not to assign a special prosecutor by writing, "I guess that's the benefit of being elected.  You really don't have to answer to anyone between elections, now do you."  (*Id.*)  Davison also included this parting shot:

> But hey, I've got an idea for you CA.  Why don't you delete/censor this post, and then we can all go before a federal judge in a 42 USC 1983 claim about free speech.  What do you say?  I'm sure the Virginia Coalition for Open Government, ACLU of Virginia, FOIA Resource Center and Virginia Bar might be interested in this issue too.

(*Id.* at 2.)

On December 28, 2015—ten days after Davison posted this comment—the CA did just that; it deleted Davison's comment and notified Davison he was "banned or blocked from posting any further comments on the Social Media Page." (Compl. ¶¶ 10-11.)

Davison contacted the CA on multiple occasions in an effort to restore his deleted comment and his ability to post new comments. (Compl. ¶¶ 12-13.) Davison's attorney similarly attempted to convince Plowman to cease censoring Davison. (Attorney Letter [Dkt. 9-1].) Despite those efforts, Plowman continued to block Davison's ability to post and refused to restore the deleted comment. (Compl. ¶ 14.)

On February 22, 2016—almost two months after Plowman deleted the comment—Davison filed the present Complaint, alleging that blocking his access and deleting his comment from a government website violated his First Amendment right to free speech. (Compl. ¶ 16.) The Complaint named Plowman in his individual capacity and in his official capacity as Commonwealth's Attorney for Loudoun County, Virginia. Davison alleges that Plowman either personally made the decision to take the above actions against him or "when made aware of those acts as head of the office, personally adopted and ratified those acts by refusing to remediate the constitutional violation." (Compl. ¶ 16.) The Complaint seeks injunctive relief and

attorney's fees, but does not seek damages or declaratory relief.[3]

About ten weeks after Davison filed this lawsuit—and about eighteen weeks after the comment was deleted—Plowman voluntarily restored Davison's ability to comment on the CA's Facebook page and undeleted the December 18, 2015 comment. (Def.'s Mem. in Supp. [Dkt. 6] at 2.) Davison has since liberally exercised his restored access by posting at least eleven new comments between May 3 and May 25, 2016. (*See* Ex. 1 [Dkt. 12].) Many of Davison's comments are critical of Plowman and reference this lawsuit.[4] Plowman has not deleted any of Davison's May comments.

On May 10, 2016, Plowman moved to dismiss this case as moot. That motion was fully briefed and argued orally, and is

---

[3] On June 2, 2016, the Court granted Davison's motion to amend his Complaint as to remedies sought. This Memorandum Opinion does not alter or affect that ruling.

[4] For example, Davison's comments include the following statements: "Plowman simply believes he is above the law" (Ex. 1 at 1); "When we have corrupt politicians like Plowman responsible for prosecuting criminals like these, nobody can be assured of justice in this country" (Ex. 1 at 1-2); "Plowman is a congenital liar" (Ex. 1 at 4); "There WILL BE a court signed document with enforceable terms and an admission by Plowman (or a verdict of the court) that he violated the US Constitution as a constitutional officer in Virginia" (Ex. 1 at 5); "It is clear he has no intention of following the law outside being forced to by the federal courts. That day will come soon!" (Ex. 1 at 9).

now ripe for disposition.  As described below, the Court will deny the motion.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) permits a party to move to dismiss a complaint for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *abrogated on other grounds by Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  Article III of the United States Constitution limits federal courts' jurisdiction to "Cases" or "Controversies."  U.S. Const., art. III.  A "case becomes moot— and therefore no longer a 'Case' or 'Controversy' for purposes of Article III—when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome."  *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013) (internal quotation and citation omitted).

It is well-recognized, "however, that a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued."  *Id.*  If voluntary cessation of that kind rendered a case moot, "a defendant could engage in unlawful

6

conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Id.* To prevent that undesirable outcome, a defendant arguing that his voluntary cessation renders a case moot bears "the heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again." *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 189 (2000)). Stated another way, "a defendant's 'voluntary cessation of a challenged practice' moots an action only if 'subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* (quoting *Laidlaw*, 528 U.S. at 189). This standard is "stringent" and the defendant's burden is "formidable." *Laidlaw*, 528 U.S. at 190.

### III. Analysis

Plowman argues that Davison's claims for injunctive relief are moot because, after Davison filed this lawsuit, Plowman restored Davison's ability to post new comments and undeleted the December 18, 2015 comment. The Court finds that Plowman's voluntary cessation does not moot this case because there is a reasonable expectation Plowman will again delete

7

Davison's comment or ban Davison due to that comment. Accordingly, the Court will deny the motion to dismiss.

Davison seeks two forms of relief: (1) "an Order enjoining Defendant to restore the deleted comments"; and (2) an order "restraining Defendant, or any acting for him, from blocking Plaintiff from participation in the public forum, now or in the future." The Court will consider each form of relief in turn.

First, the Court finds that Plowman did not moot Davison's claim for restoration of the December 18, 2015 comment by undeleting that comment after this litigation began. As an initial matter, it remains factually disputed whether Plowman has fully restored the December 18, 2015 comment. At the hearing on this motion, Davison asserted that Plowman merely made the comment visible to Facebook visitors who are logged-in to a Facebook account. The comment, however, remains "hidden" to any visitor of the CA's Facebook page that is not logged in, such as a passive viewer reaching the page through a search engine. Plowman has not presented any rebuttal to rebut this assertion. Thus, the issue of the full restoration of the December 18, 2015 comment "continue[s] to be live and the parties continue to have a legally cognizable interest in the outcome." *Id.*

8

Even if Plowman did fully restore the December 18, 2015 comment, that act did not moot Davison's claim for injunctive relief. As described above, Plowman bears the formidable burden of persuading the Court that he cannot be reasonably expected to censor the December 18, 2015 comment again if this case is dismissed. *See Wall*, 741 F.3d at 498. Courts considering whether voluntary cessation moots a claim often look for a change in official policy or law, or some other external constraint on the defendant's action, such as a collateral court order. *See Am. Freedom Defense Initiative v. Metro. Transp. Auth.*, 815 F.3d 105, 110 (2d Cir. 2016); *McLean v. City of Alexandria*, 86 F. Supp. 3d 475, 478 (E.D. Va. 2015). In the absence of such a constraint, "when a defendant retains the authority and capacity to repeat an alleged harm, a plaintiff's claim should not be dismissed as moot." *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014). "Unsubstantiated assurances" in legal briefing and "bald assertions of a defendant . . . that it will not resume a challenged policy fail to satisfy any burden of showing that a claim is moot." *Wall*, 741 F.3d at 497-98. Furthermore, a defendant's persistence in his belief that his challenged actions were legal indicates a risk the defendant will repeat those actions. *See Knox v. Serv. Emps. Int'l Union, Local 1000*, 132 S. Ct. 2277, 2287 (2012);

*Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 800 (4th Cir. 2001).

Under the standard described above, Plowman does not carry his heavy burden of demonstrating that this case is moot. Plowman does not put forward any change in official policy or other restraint on his ability to again delete Davison's December 18, 2015 comment. Furthermore, Plowman has not unambiguously disclaimed his ability to delete that comment. In his legal memorandum, Plowman noted that "it is far from clear whether Mr. Davison's December 18 post complied with the Policy," referring to Loudoun's Social Media Policy. (Def.'s Reply at 2.) From this comment and the absence of any other assurance from Plowman, the Court has no difficulty concluding it is not "absolutely clear" the December 18, 2015 comment will remain uncensored. Accordingly, injunctive relief remains an effectual remedy and this claim is not moot.

Second, the Court concludes that the restoration of Davison's ability to post on the Facebook page did not moot his claim for an injunction against being banned. Plowman provides only minimal assurances that he will not again ban Plowman for the December 18, 2015 comment. At oral argument, Plowman's attorney affirmed that Plowman no longer maintains he has the authority to ban Davison for that comment. This recent change-

10

of-heart, however, is not buttressed by any change in official policy or even a signed affidavit from Plowman regarding his perception of his ability to ban Facebook participants. Accordingly, Plowman's statement falls into the category of "unsubstantiated assurances" and "bald assertions" that do not moot a claim under the voluntary cessation standard. *Wall*, 741 F.3d at 497-98; *Lyons P'ship,* 243 F.3d at 800.

It is no assurance that Plowman believes the U.S. Constitution limits his discretion to ban a Facebook participant. Plowman does not argue that the scope of the First Amendment is in any way different now than when Plowman banned Davison in December 2015. Instead, the only factor that has arguably changed since December 2015 is Plowman's own interpretation of the First Amendment.[5] The Court finds no clear assurance that his interpretation will not change again if this case is dismissed.

Lastly, the circumstances giving rise to this lawsuit have not abated, as Davison continues to post critical comments on the CA's Facebook page. (Ex. 1 [Dkt. 12].) Even Plowman notes "he is concerned that the parties will be back before this Court given Mr. Davison's recent posts on the Commonwealth

---

[5] In Plowman's Answer to the Complaint, he denies that his censorship violated Davison's First Amendment rights. (*See* Answer [Dkt. 7] ¶¶ 15, 16.)

11

Attorney's Facebook page." (Def.'s Reply at 10.) Because there is some reasonable expectation that Plowman will again ban Davison for the December 18, 2015 comment, this Court may issue effectual injunctive relief and this case is not moot.

Before concluding, the Court must note the limited nature of this proceeding. As alleged, this Complaint relates only to Plowman's censorship of the December 18, 2015 comment. Accordingly, if Davison prevails on the merits of his claim—something the Court does not address in this Memorandum Opinion—injunctive relief could only issue relating to the December 18, 2015 comment and any ban resulting from that comment. It is beyond the allegations in this Complaint and this Court's jurisdiction to issue injunctive relief as to comments not yet made or brought before this Court. *See St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 627 (7th Cir. 2007).

### IV.   Conclusion

For the foregoing reasons, the Court will deny Defendant Plowman's motion to dismiss for lack of subject matter jurisdiction.

An appropriate order will follow.

|  |  |
|---|---|
| June 6, 2016 | /s/ |
| Alexandria, Virginia | James C. Cacheris |
|  | UNITED STATES DISTRICT COURT JUDGE |