IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| BRIAN DAVISON, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
|              v. ) | Case No. 1:16cv180 (JCC/IDD) |
| ) | |
| JAMES PLOWMAN, ) | |
| ) | |
|     Defendant. ) | |

**M E M O R A N D U M   O P I N I O N**

Defendant James Plowman, Attorney for the Commonwealth for Loudoun County, Virginia, deleted a comment left by Plaintiff Brian Davison on the official Commonwealth Attorney's Facebook page. He then blocked Plaintiff from leaving further comments on that page. Plaintiff filed suit alleging that Defendant's actions violated the First Amendment, and has now filed a Motion for Partial Summary Judgment [Dkt. 21]. For the reasons that follow, the Court will grant Plaintiff's Motion in part and deny it in part.

**I. Background**

The following facts, drawn primarily from Plaintiff's Memorandum in Support of his Motion and Defendant's Opposition, are undisputed.

Loudoun County maintains an official "Social Media Comments Policy." *See* Compl. Exh. 1 [Dkt. 1-1]; Opp. Exh. D

[Dkt. 24]. The policy in force during the events giving rise to this suit provided that "[t]he purpose of Loudoun County social media sites is to present matters of public interest in Loudoun County." *Id*. The policy "encourage[d]" commenters "to submit . . . questions, comments and concerns" through Loudoun County's social media websites, but reserved the County's right to "delete submissions" that violated enumerated rules – for example, comments that "contain[ed] vulgar language" or "spam." *Id*.

Defendant is Loudoun County's Commonwealth Attorney. *See* Mem. in Supp. of Mot. for Summ. J. [Dkt. 22] at 2-3 ("Statement of Facts" or "SOF") ¶ 1. His office maintains an official Facebook[1] page, over which he exercises supervisory authority. *Id*. ¶ 2. During the events giving rise to this suit, the Facebook page was administered by Defendant's employee, Heather Williamson. *Id.* As an official Loudoun County social media website, the Facebook page is subject to the County's Social Media Comments Policy. Answer [Dkt. 7] ¶ 7(a).

On December 2, 2015, Defendant's office began an initiative intended to "increase the public's understanding of

---

[1] "Facebook is an online social network where members develop personalized web profiles to interact and share information with other members," and that can be used by "businesses, organizations and brands . . . for similar purposes." *Bland v. Roberts*, 730 F.3d 368, 385 (4th Cir. 2013), *as amended* (Sept. 23, 2013) (citations omitted).

2

the criminal justice process by periodically publishing articles on [its] website, Facebook, and Twitter pages about specific topics . . . chosen based on questions and comments the office receives from the public[.]" Compl. Exh. 2 [Dkt. 1-2]; SOF ¶ 7. The first article posted to the office's Facebook page concerned the office's use of special prosecutors. *See id*.

On December 18, 2015, Plaintiff left a lengthy comment on the office's Facebook post. *See id*. The comment criticized Defendant's office for failing to appoint a special prosecutor in connection with a specific instance of alleged malfeasance. *See id*. The comment concluded with an invitation to Defendant to "delete/censor this post, and then we can all go before a federal judge in a 42 USC 1983 claim about free speech." *Id*.

Shortly thereafter, Defendant did just that. On or before December 18, 2015, Plaintiff discovered that his comment had been removed from the official Commonwealth Attorney's Facebook page. SOF ¶ 6. He found as well that he had been blocked from making further comments. *Id*. Defendant admits that he himself made the decision to delete Plaintiff's comment and block Plaintiff from his office's the Facebook page. *Id*.

Plaintiff requested on several occasions that Defendant restore his ability to post comments on the office's official Facebook page. SOF ¶ 10. Defendant refused, and Plaintiff filed suit. *See id*.

3

Ten weeks later, Defendant voluntarily restored Plaintiff's access to his office's Facebook page and at least partially restored Plaintiff's original comment. *See Davison v. Plowman*, No. 1:16-CV-0180, 2016 WL 3167394, at *2 (E.D. Va. June 6, 2016). Defendant then moved for to dismiss Plaintiff's Complaint, claiming that his actions had mooted the case. *See id*. The Court denied Defendant's Motion, finding that he had not carried the "heavy burden" of demonstrating his voluntary cessation rendered this action moot. *Id*. at *4.

Plaintiff now moves for partial summary judgment on the issues of (1) whether the official Facebook page of the Loudoun County Commonwealth's Attorney's Office constitutes a limited public forum under the First Amendment; (2) whether Defendant violated the First Amendment by deleting Plaintiff's comment and blocking Plaintiff from posting further comments; and (3) whether Defendant's conduct violated Plaintiff's "procedural due process rights." Plaintiff further seeks a permanent injunction enjoining Defendant from "any prior restraint of speech on social media forums established by him to conduct two-way communication with the public on official business," and requiring Defendant "to provide appropriate procedural due process in all further censorship of Plaintiff's comments on such social media forums."

Defendant has responded by calling the Court's attention to a revised "Social Media Comments Policy" adopted by Loudoun County the day before Plaintiff filed the instant Motion. The new policy is similar in many respects to the old policy. It provides that "[t]he purpose of Loudoun County's official social media platforms is to provide information of public interest to the county's residents, business community, visitors and other members of the general public." Opp. Exh. D [Dkt. 24]. The policy further "encourage[s]" commenters "to engage [their] local government through social media by submitting . . . comments and questions regarding the posted topics and by sharing the county's information with [their] network." *Id*. Much like the old policy, the new policy reserves the County's right to remove comments that violate certain enumerated rules. *See id*.

The new policy, however, states that it is now the responsibility of the "Public Affairs and Communications Division of the Office of the County Administrator" to "review and authorize the removal of a comment when appropriate." *Id*. The policy further provides for a review process through which commenters are able to contest the removal of their comments. *See id*. Finally, the new policy no longer reserves the County's right to delete comments that are "clearly off topic." *Id*.

5

**II. Legal Standard**

"[S]ummary judgment may be granted as to any part of a claim." *Bell Microproducts, Inc. v. Glob.-Insync, Inc.*, 20 F. Supp. 2d 938, 941 (E.D. Va. 1998). It is appropriate only where, on the basis of undisputed material facts and drawing all reasonable inferences in favor of the nonmoving party, the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion," and identifying the matter "it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex,* 477 U.S. at 323. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "[T]he non-moving party 'may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.'" *Hughes v. Bedsole,* 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986)).

**III. Analysis**

The Court notes first that Plaintiff raises a procedural due process claim for the first time in his Motion

for Summary Judgment. No such claim is mentioned in Plaintiff's original or Amended Complaint. A party may not simply conjure a claim not pled out of thin air after the close of discovery, and on the eve of the final pretrial conference. Plaintiff apparently recognizes as much, as abandons his due process claim in his Reply. Accordingly, the Court will deny summary judgment with respect to Plaintiff's unpled due process claim.

Turning to the remainder of Plaintiff's Motion, the Court notes that Defendant offers little substantive argument in opposition. Rather, Defendant contends that "[f]actual developments since June 2016 now render this case moot." Opp. [Dkt. 24] at 2. Specifically, Defendant argues that the County's new Social Media Comments Policy, under which Defendant is no longer responsible for removing comments from his office's Facebook page, renders "injunctive relief . . . unwarranted." *Id.* at 3.

That, however, serves as only a partial response to Plaintiff's Motion. Plaintiff's Amended Complaint seeks several forms of relief in addition to a permanent injunction. The new policy plainly does not moot Plaintiff's claim for monetary damages. This case therefore remains a live controversy regardless of whether the new policy renders injunctive relief inappropriate. *See Adams v. Duncan*, 179 F. Supp. 3d 632, 644–45 (S.D.W. Va. 2016). Moreover, Federal Rule of Civil Procedure

7

56(a) permits a party to "move for summary judgment" on "part of" a "claim or defense." The cause of action and the request for relief are distinct parts of a claim on which summary judgment may be granted independently. *See Meeks v. Emiabata*, No. 7:14CV00534, 2015 WL 1636800, at *2-3, n.3 (W.D. Va. Apr. 13, 2015). Defendant's argument regarding injunctive relief therefore has no bearing on the Court's ability to rule on the substantive issues raised in Plaintiff's Motion apart from the requested relief.

Proceeding to those issues, Plaintiff first seeks a ruling on the status of the Commonwealth Attorney's Facebook page under the First Amendment. Defendant has earlier conceded that "[u]nder Loudoun County's Social Media Comments Policy . . . the Commonwealth's Attorney's Facebook page qualifies as a limited public forum" for First Amendment purposes. Rep. [Dkt. 10] at 2. While not bound by this legal conclusion, the Court agrees.

A limited public forum is a forum for speech "created for a limited purpose such as use by certain groups . . . or for the discussion of certain subjects." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 71 n.7 (1983). In determining whether the County has designated the Commonwealth Attorney's Facebook page a limited public forum, the Court looks to "the policy and practice of the government." *Cornelius v.*

8

*NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 802 (1985). "Limited public forums are characterized by 'purposeful government action' intended to make the forum 'generally available'" for certain purposes. *Child Evangelism Fellowship of S.C. v. Anderson Sch. Dist. Five*, 470 F.3d 1062, 1067 (4th Cir. 2006) (quoting *Goulart v. Meadows*, 345 F.3d 239, 250 (4th Cir. 2003)).

The County maintains an policy under which it expressly "encourage[s]" commenters "to engage [their] local government through social media by submitting . . . comments and questions regarding the posted topics." Opp. Exh. D [Dkt. 24]. That policy further enumerates certain kinds of comments that the County "reserves the right to remove." *See id*. The policy thus invites speech and delineates the type of speech Loudoun County's "official social media platforms" are intended to facilitate. This policy indicates the County's intent to open a forum for speech that the public may utilize consistent with certain restrictions. Defendant has expressly admitted that the policy is intended for this purpose. *See* Rep. [Dkt. 10] at 2. Although it does not govern a physical space, this manner of policy creates a "metaphysical" forum for First Amendment purposes. *See Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 830 (1995). The same is true of the

County's former policy, which shared all of the relevant characteristics.

Defendant has further admitted that it is his office's practice to permit public comment on the Commonwealth Attorney's Facebook page, *see* Answer [Dkt. 17] ¶ 5(a), and that the Commonwealth's Attorney's Facebook page is governed by Loudoun County's Social Media Comments Policy.  *See* Opp. Exh. C (Plowman Decl.) [Dkt. 24] ¶ 2.  Given this policy and practice, as well as Defendant's various admissions, the Court concludes that Loudoun County's Social Media Comments Policy, as applied to the Commonwealth's Attorney's Facebook page, creates a limited public forum under the First Amendment.  Plaintiff is therefore entitled to summary judgment on that issue.

The Court next turns to whether Defendant violated the First Amendment by deleting Plaintiff's comment and blocking Plaintiff from commenting further.  On this point, Plaintiff simply asserts that Defendant "violated [his] First Amendment right of free speech in a limited public forum by deleting constitutionally protected speech and by blocking [him] from posting on [the Commonwealth Attorney's] Facebook page."  Mem. in Supp. of Mot. for Summ. J. [Dkt 22] at 6.  Plaintiff makes no further argument and directs the Court to no supporting evidence.

This conclusory statement does not entitle Plaintiff to summary judgment. A limited public forum is subject to such restrictions as the government imposed in creating it. *See Perry Educ. Ass'n*, 460 U.S. at 71 n.7. While it is true that "[o]nce it has opened a limited forum . . . the State must respect the lawful boundaries it has itself set," *Rosenberger*, 515 U.S. at 829, the government remains free to police those boundaries. The question before the Court is therefore whether Defendant's actions were consistent with the County's Social Media Comments Policy.

The policy in force during the events giving rise to this suit permitted the removal of comments for certain enumerated reasons. *See* Compl. Exh. 1 [Dkt. 1-1]. Those reasons included "personal attacks of any kind" and content that is "clearly off topic," among others. *Id*. Plaintiff does not address whether his comment complied with the County's Social Media Comments Policy. Having reviewed the comment, the Court is not able to say with confidence that it did. Moreover, it is not clear based on the evidence before the Court that Defendant specifically chose to delete the comment in question, or whether the comment was automatically deleted when Defendant blocked Plaintiff from the Commonwealth Attorney's Facebook page.

Relatedly, Plaintiff provides no evidence to support his claim that he was blocked from commenting on the

Commonwealth Attorney's Facebook page due to the single comment now before the Court. Indeed, the only evidence Plaintiff has submitted on this point suggests that he was blocked "due to his repeated posting of comments deemed to be clearly off topic in violation of the County social media policy." *See* Mem. Exh. 1 [Dkt. 22-1] at 3.

In short, Plaintiff's Motion fails to demonstrate that Defendant violated the County's Social Media Comments Policy in deleting Plaintiff's comment and blocking him from the Commonwealth Attorney's Facebook page. Plaintiff therefore provides no reason for the Court to find that Defendant violated the First Amendment in this instance. Accordingly, the Court will deny summary judgment on that issue.

Finally, even if the Court was to find that Defendant violated the First Amendment, the Court would not grant the requested injunction. The injunction Plaintiff seeks would prohibit Defendant from undertaking "any prior restraint of speech on social media forums established by him to conduct two-way communication with the public on official business." This amounts to an injunction generally forbidding Defendant from violating the First Amendment via social media. Federal Rule of Civil Procedure 65(d)(1)(C) requires that injunctions "describe in reasonable detail . . . the act or acts restrained or required." "Injunctions that 'merely instruct the enjoined

12

party not to violate'" the law "generally are overbroad, increasing 'the likelihood of unwarranted contempt proceedings for acts unlike or unrelated to those originally judged unlawful.'" *Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 504 (7th Cir. 2008) (quoting *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004)). Plaintiff's requested injunction falls squarely within this disfavored category.

### IV. Conclusion

For the foregoing reasons, the Court will grant Plaintiff's Motion for Partial Summary Judgment to the extent that the Court finds Loudoun County's Social Media Comments Policy, as applied to the Commonwealth's Attorney's Facebook page, creates a limited public forum under the First Amendment. The Court will deny Plaintiff's Motion in all other respects.

An appropriate order will issue.

|  | /s/ |
|---|---|
| January 10, 2017 | James C. Cacheris |
| Alexandria, Virginia | UNITED STATES DISTRICT COURT JUDGE |