IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| BRIAN DAVISON, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|         v. | )  Case No. 1:16cv180 (JCC/IDD) |
| | ) |
| JAMES PLOWMAN, in his official | ) |
| capacity as Attorney for the | ) |
| Commonwealth for Loudoun | ) |
| County, Virginia, and | ) |
| individually, | ) |
| | ) |
|     Defendant. | ) |

## M E M O R A N D U M   O F   D E C I S I O N

Plaintiff Brian Davison brings a claim under the First
Amendment against Defendant James Plowman, individually and in
his official capacity as Loudoun County Commonwealth's Attorney.
Plaintiff alleges that Defendant violated his First Amendment
rights by deleting a comment Plaintiff left on the official
Loudoun County Commonwealth's Attorney Facebook page and by
thereafter blocking Plaintiff from leaving further comments on
that page for a period of several months.  A bench trial was
held on January 25, 2017, and the Court took the matter under
advisement.

For the reasons that follow, the Court finds and
concludes that (1) Defendant did not violate the First Amendment
by deleting Plaintiff's Facebook comment; (2) Defendant is

entitled to qualified immunity in his individual capacity with
respect to his decision to block Plaintiff from further posting
on the Loudoun County Commonwealth's Attorney Facebook page; (3)
Defendant is entitled to Eleventh Amendment immunity with
respect to Plaintiff's claim for damages against him in his
official capacity; (4) Plaintiff has failed to establish any
monetary damages; and (5) Neither declaratory nor injunctive
relief is warranted in this case.  Accordingly, the Court
renders a verdict for Defendant and finds that judgment should
be entered in Defendant's favor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

### I. Findings of Relevant Fact

1) Plaintiff Brian Davison is a resident of Loudoun County,
   Virginia.  Trial Transcript [Dkt. 41] ("Tr.") 22-23.

2) Defendant James Plowman is and has at all relevant times
   been Loudoun County Commonwealth's Attorney.  Tr. 93.

3) Defendant is a constitutional officer of the Commonwealth
   of Virginia rather than a Loudoun County official.  Because
   he works closely with the Loudoun County government,
   however, Defendant's office adopts many of the County's
   policies and operating procedures.  Tr. 95-96; 116-18.

4) Defendant's office is funded both by Loudoun County and the
   Commonwealth, with the former contributing the greater

amount and providing employment benefits to Defendant's employees.  Tr. 95-97.

5)   Beginning in 2014, Plaintiff became embroiled in a dispute with Loudoun County Public Schools regarding its response to document requests he made under the Virginia Freedom of Information Act.  Tr. 27-30.

6)   That conflict escalated to the point that Plaintiff was eventually banned from the premises of his children's elementary school.  Tr. 38.

7)   During a court hearing related to that dispute, a school official offered testimony that Plaintiff believed to constitute perjury.  Tr. 30-32.

8)   Plaintiff urged state and local authorities to investigate the alleged perjury.  Tr. 38-40.

9)   Plaintiff sent several emails to Defendant's office regarding his dispute with the Loudoun County School Board. Tr. 125.

10)  In December of 2015, Plaintiff was informed that an attorney in Defendant's office had reviewed the alleged perjury and declined to prosecute the school official.  Tr. 67.

11)  Shortly thereafter, Plaintiff visited the official Facebook page of Defendant's office.  Tr. 42.

12) Facebook is a social media network that, among other things, permits public figures like Defendant to communicate with constituents.  Defendant's office maintains a Facebook page for that purpose. Pl. Exh. 5 at 2; Tr. 102.

13) At the time of the events giving rise to this suit, the Facebook page maintained by Defendant's office was administered by Defendant's employee, Heather Williamson. Pl. Exh. 5 at 2-3; Tr. 97.

14) At that time, Defendant retained decision making authority over the Facebook page's content.  Pl. Exh. 5 at 2-3; Tr. 101.

15) Defendant had adopted the version of Loudoun County's Social Media Comments Policy then in force to govern his office's Facebook Page.  Tr. 112-13.

16) That policy provided that "[t]he purpose of Loudoun County social media sites is to present matters of public interest in Loudoun County."  The policy further "encourage[d]" commenters "to submit . . . questions, comments and concerns" through Loudoun County's social media websites, but reserved the County's right to "delete submissions" that violated enumerated rules.  As relevant here, the policy permitted the removal of comments that were "clearly off topic."  Df. Exh. 1.

17) While viewing the official Loudoun County Commonwealth's
Attorney Facebook page, Plaintiff noticed that Defendant's
office had recently posted a link to an article about
special prosecutors.  Tr. 42-43.

18) The article was part of a new initiative by Defendant's
office intended to "increase the public's understanding of
the criminal justice process by periodically publishing
articles on [its] website, Facebook, and Twitter pages
about specific topics . . . chosen based on questions and
comments the office receives from the public[.]"  Df. Exh.
5.

19) Plaintiff alleges that Defendant's decision to post the
article was motivated by his role in a controversy
regarding the appointment of special prosecutors during the
prior election season.  Tr. 42-43.  Plaintiff, however, did
not introduce the article into evidence or adduce evidence
tending to show that the article was posted with an
ulterior motive.  The Court finds Plaintiff's testimony
regarding Defendant's ulterior motive for posting the
article not credible.

20) Plaintiff left a lengthy comment on this link, Pl. Exh. 1,
reproduced in its entirety below:

 **Brian Davison** So I have a question for the Loudoun County Commonwealth's Attorney's Office. Suppose a public body (The Official Loudoun County Public Schools) fails to respond to a FOIA request on time. The request concerns the non-disclosures of a public official (Vote Eric Hornberger) even though he works for a charter school billionaire and votes on charter school issues for LCPS. The public officials then lie in court simply to avoid being forced to pay a small fine for violating FOIA. Would the CA ever be interested in holding Loudoun public officials accountable in these circumstances?

The facts are these:

1. LCPS claims an email response to the FOIA request (#40) was sent on May 15 but no email was ever sent to the requester.

2. LCPS' draft email circulated on May 15 to Vote Eric Hornberger had numerous officials copied on the email even though LCPS has NEVER included other officials names when responding to an actual FOIA request.

3. LCPS asks the court for additional time to respond to this FOIA request on June 3. LCPS acknowledges the ONLY reason to have the hearing is to get extra time for #40.

4. On May 27, LCPS asks to call off the hearing on #40 since it claims it satisfied all requests. The requester tells LCPS he never received a response to #40 on May. The requester then files a Memo of Law to the court and LCPS indicating he has never received a response to #40.

5. In court on June 3. LCPS attorneys put witnesses on the stand that claim LCPS did respond on May 15. But LCPS brings no email documents to demonstrate they responded (they obviously wouldn't want to bring the actual May 15 email because it proved they had not responded).

6. LCPS attorneys claim "for the record", they never knew the requester had not received a response to #40. One might think LCPS could have forwarded the May 15 email on May 27 and avoided having to show up in court altogether since the requester agreed the other FOIA were satisfied.

The Commonwealth Attorney's office asks for a special prosecutor to investigate Michael Chapman for releasing FOIA emails that had already been cleared through the Leesburg Attorney. But the Commonwealth Attorney doesn't think LCPS defrauded the court and committed perjury by claiming under oath they responded to FOIA #40 regarding Vote Eric Hornberger's charter disclosures? And refuses to prosecute? Are you kidding me? Why

wouldn't you at least assign a special prosecutor in this case? You have documented proof that perjury occurred without talking to the suspects and you simply say no case here?! I'll donate to the charity of your choice if you let a special prosecutor from Arlington or Fairfax take a look and they say no crime was committed.

The Commonwealth Attorney today decided that there was no bad intent on behalf of LCPS. The CA can't explain why LCPS didn't bring the single page email to court on June 3. Would a CA attorney ever fail to show up to court without evidence proving its case? Would they bring reams (~400 pages) of paper as evidence but fail to bring a 1-page email that proved they responded?

The CA can't explain how the LCPS attorney would quote the Memo of Law filed by its opponent and then claim - "for the record" - that it never knew that same opponent hadn't received a response even though it was clearly stated in the Memo of Law. The CA can't really explain much of anything except that it doesn't wish to prosecute clear perjury. I guess that's the benefit of being elected. You really don't have to answer to anyone between elections, now do you.

But hey, I've got an idea for you CA. Why don't you delete/censor this post, and then we can all go before a federal judge in a 42 USC 1983 claim about free speech. What do you say? I'm sure the Virginia Coalition for Open Government, ACLU of Virginia, FOIA Resource Center and Virginia Bar might be interested in this issue too.

Just now

21) Plaintiff left this comment intending to put political pressure on Defendant to act on Plaintiff's concerns about the alleged perjury. Tr. 47.

22) Defendant's employee, Heather Williamson, brought Plaintiff's comment to Defendant's attention, in part because of its length and in part due to Plaintiff's earlier email to Defendant's office. Tr. 125.

23) After reviewing the comment, Defendant deemed the comment to violate the Loudoun County Social Media Comments Policy. Specifically, Defendant found the comment to be clearly off topic. Tr. 102-04. The Court specifically finds Defendant's testimony on this point credible.

24) Having found the comment to be off topic, Defendant directed Ms. Williamson to remove it from the Loudoun County Commonwealth's Attorney Facebook page. Tr. 101.

25) Plaintiff then proceeded to leave a series of comments on the Loudoun County Commonwealth's Attorney Facebook page. Tr. 105-06. Neither party adduced evidence regarding the specific content of these comments.

26) Defendant likewise deemed these comments to violate the Loudoun County Social Media Comments Policy as clearly off topic. Tr. 105-06; Pl. Exh. 5 at 3.[1]

---

[1] The Court notes that the parties' accounts of the timing of Plaintiff's posts and Defendant's decision to delete them differ significantly. See Tr. 71-72; 105-06; Pl. Exh. 5 at

27) On January 4, 2016, Defendant and Ms. Williamson exchanged emails regarding Plaintiff's comments on the Loudoun County Commonwealth's Attorney Facebook page. Ms. Williamson stated that she had spoken with another Loudoun County employee with knowledge of the County's social media practices. That employee had informed her that individuals had been blocked from other County social media websites for "posting continuously." In response, Defendant gave Ms. Williamson authorization to block Plaintiff from posting to the Loudoun County Commonwealth's Attorney Facebook page, concluding that "while [Plaintiff] has a [F]irst [A]mendment right to do what he pleases [ ] we have no obligation to provide him a forum to do such." Ms. Williamson replied "[y]up" and pointed out that Loudoun County's Social Media Comments Policy "covers spam, off topic posts, etc." Pl. Exh. 8.

28) On December 28, 2015, Plaintiff discovered that his subsequent comments had disappeared from the Loudoun County Commonwealth's Attorney Facebook page that he was not able to post further comments to the that page. Tr. 48-49.

29) Plaintiff contacted Defendant's office and asked that his ability to post comments on the Loudoun County

---

3. The precise timing of the posts, however, is not material to the Court's resolution of the legal issues in this case.

Commonwealth's Attorney Facebook page be restored. Defendant refused.  Tr. 49-50.

30) Plaintiff then retained counsel and, on February 22, 2016, filed the instant lawsuit.

31) On March 9, 2016, Plaintiff purchased a Facebook Ad in which he discussed Defendant's actions.  *See* Df. Exh. 59. Plaintiff intended for the Ad to target Facebook users interested in Defendant's Facebook page in an effort to reach the audience he believed he had been denied by Defendant's actions.  Tr. 57.

32) Plaintiff felt that being banned from Defendant's Facebook page added to the stigma Plaintiff already faced after being banned from the premises of his children's elementary school.  Tr. 56.  Plaintiff further believed that Defendant's actions contributed to the length of his trespass ban from school premises, *see* Tr. 56, although he adduced no evidence to substantiate this belief.

33) Throughout the period during which he was banned from Defendant's office's Facebook page, Plaintiff made extensive use of social media to comment publicly on his various disputes with Defendant and Loudoun County Public Schools.  Among other things, Plaintiff wrote numerous Facebook posts, both using his personal account and a Facebook page he had created called "Virginia SGP."  Df.

Exhs. 6-7, 10-13.  In these posts, Plaintiff "tagged"
individuals, who would then receive notice of the post.
*See, e.g.*, Df. Exhs. 10, 11; Tr. 51-52, 75-76.  Plaintiff
also made use of Twitter, another social media platform, to
make his case to the public. *See, e.g.*, Df. Exh. 7; Tr. 75.

34) On May 2, 2016, Defendant reversed his earlier decision,
reinstating Plaintiff's ability to post comments on the
Commonwealth Attorney's Facebook page.  This had the effect
of restoring Plaintiff's comments that had previously been
hidden.  Tr. 113-14, 138.

35) Plaintiff became aware of Defendant's decision on or before
May 4, 2016.  Df. Exh. 14.  Plaintiff nonetheless proceeded
to pay for a second Facebook Ad related to his dispute with
Defendant.  Between May 4, 2016 and May 30, 2016, Plaintiff
spent $24.00 on this Ad.  Df. Exh. 60.

36) After his access to the Commonwealth's Attorney Facebook
page was restored, Plaintiff proceeded to comment
extensively on that page. *See, e.g.*, Df. Exhs. 15-21.  None
of these comments have since been hidden or otherwise
censored.  Tr. 89-90.

37) On November 22, 2016, Loudoun County adopted a new Social
Media Comments Policy formulated in collaboration with
Defendant's office.  The new policy is similar in many
respects to the old policy.  It provides that "[t]he

10

purpose of Loudoun County's official social media platforms is to provide information of public interest to the county's residents, business community, visitors and other members of the general public." The policy further "encourage[s]" commenters "to engage [their] local government through social media by submitting . . . comments and questions regarding the posted topics and by sharing the county's information with [their] network." *Id*. Much like the old policy, the new policy reserves the County's right to remove comments that violate certain enumerated rules. Df. Exh. 2.

38) The new policy, however, differs from the old in two crucial respects. First, it no longer permits the removal of comments that are "clearly off topic." *See* Df. Exh. 2. Second, the authority to remove comments from County social media websites now resides with the Public Affairs and Communications Division of the Office of the County Administrator. Df. Exh. 2.

39) Defendant's office has adopted the new Social Media Comments Policy. Tr. 116. Accordingly, Defendant no longer exercises control over the removal of comments from the Loudoun County Commonwealth's Attorney Facebook page.

40) Defendant has no intention of abandoning this new policy. Tr. 116.

11

## II. Conclusions of Law

### A. Defendant did not violate the First Amendment by Removing Plaintiff's Comment from the Loudoun County Commonwealth's Attorney Facebook Page.

The Court has already ruled that the Loudoun County Social Media Comments Policy – both as originally written and as amended – serves to create a limited public forum as applied to the Loudoun County Commonwealth's Attorney Facebook page. *See* Mem. Op. [Dkt. 35]. A limited public forum is one "created for a limited purpose such as use by certain groups . . . or for the discussion of certain subjects." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 71 n.7 (1983). "Once it has opened a limited forum," the government "must respect the lawful boundaries it has itself set." *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995).

The government, however, may police the boundaries of a limited public forum it has created. "When a particular forum is classified as a designated/limited public forum, '[t]wo levels of First Amendment analysis' apply: the 'internal standard' and the 'external standard.'" *Goulart v. Meadows*, 345 F.3d 239, 250 (4th Cir. 2003) (quoting *Warren v. Fairfax County*, 196 F.3d 186, 193-94 (4th Cir.1999)) (alteration in original). With respect to the "internal standard," "[i]n limited public fora, strict scrutiny is accorded only to restrictions on speech

that falls within the designated category for which the forum has been opened." *Hotel Employees & Rest. Employees Union, Local 100 of N.Y., N.Y. & Vicinity, AFL CIO v. City of N.Y. Dep't of Parks & Recreation*, 311 F.3d 534, 545 (2d Cir. 2002); *see also Am. Civil Liberties Union v. Mote*, 423 F.3d 438, 444 (4th Cir. 2005). If the speech restricted falls outside the bounds of the designated forum, the Court need determine only whether the speech restriction applied is viewpoint neutral and reasonable in light of the purpose of the forum. *See Mote*, 423 F.3d at 444; *see also Child Evangelism Fellowship of MD, Inc. v. Montgomery Cnty. Pub. Sch.*, 457 F.3d 376, 383 (4th Cir. 2006) ("In a limited public forum . . . the government may restrict access to 'certain groups' or to 'discussion of certain topics,' subject to two limitations: the government restrictions must be both reasonable and viewpoint neutral."). The restriction in question "'need only be reasonable; it need not be the most reasonable or the only reasonable limitation.'" *Id.* at 445 (quoting *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 808 (1985)).

At the time Defendant removed Plaintiff's comment from his office's Facebook page, the operative Social Media Comments Policy stated that "[t]he purpose of" the Facebook page was "to present matters of public interest in Loudoun County." Df. Exh. 1. The policy included a provision reserving Defendant's right

13

to remove comments deemed "clearly off topic," making clear that it was Defendant's role to select "matters of public interest" for public discussion. *Id.*; *see also* Tr. 128.  The amended policy amplifies and clarifies this purpose by inviting public comment only with respect to "the posted topics."  Df. Exh. 2. The effect of this restriction is and was to limit public comment on Defendant's Facebook page to discussion of topics selected by Defendant's office.  As this was the policy invoked to justify the removal of Plaintiff's comment, the Court must determine (1) whether Defendant's comment was, in fact, "clearly off topic" – i.e. whether it fell outside of the bounds of the forum – and (2) if so, whether the "clearly off topic" restriction was viewpoint neutral and reasonable in light of the purpose of the forum.[2]

Here, Defendant posted a link to an article he had written concerning special prosecutors as part of a program intended to "increase the public's understanding of the criminal justice process" generally.  Plaintiff responded by posting a lengthy comment that did not further any dialogue about the role of special prosecutors in the criminal justice system.  Rather than engage with the content or topic of the article,

---

[2]     The first step in assessing any First Amendment claim is to determine whether the speech at issue is constitutionally protected.  *See Mote*, 423 F.3d at 442. The comment submitted by Plaintiff is self-evidently constitutionally protected political speech, and so the Court does not belabor the point.

Plaintiff's comment was intended to pressure Defendant to act on Plaintiff's concerns about alleged perjury by a Loudoun County Public Schools official. *See, e.g.*, Tr. 43. Indeed, Plaintiff testified as much. Plaintiff was asked by his own counsel at trial whether his comment was a response to Defendant's article. Tr. 45-47. Plaintiff responded that it was not, but was rather "political speech aimed at informing the public of [Defendant's] actions and to eventually have [Defendant] voted out of office." Tr. 47. Given his testimony, it is not clear that Plaintiff read the article in question before posting his comment.

While Plaintiff's comment does reference special prosecutors, that aspect of the comment is mere window dressing. The reference to a special prosecutor was simply a hook upon which Plaintiff attempted to hang his frustration that Defendant refused to pursue Plaintiff's claims of perjury. The comment, on its face and by Plaintiff's own admission, did not engage with the topic of Defendant's original post, but rather attempted to hijack the discussion for Plaintiff's ends. Plaintiff's comment therefore fell outside the bounds of the limited public forum established by the Social Media Comments Policy.

That being so, the Court next asks whether the "clearly off topic" restriction was "'viewpoint neutral and reasonable in light of the objective purposes served by the

forum.'"  *Mote*, 423 F.3d at 444 (quoting *Warren v. Fairfax Cnty.*, 196 F.3d 186, 194 (4th Cir. 1999)).  First, a restriction limiting a forum to discussion of selected topics – a common restriction among limited public forums, *see Perry Educ. Ass'n*, 460 U.S. at 71 n.7 – is self-evidently viewpoint neutral. Furthermore, the restriction on speech deemed "clearly off topic" in the original Social Media Comments Policy was reasonably related – indeed, integral – to the forum's purpose. As discussed above, the Social Media Comments Policy contemplated that Defendant would set the agenda, and that interested parties would participate in moderated discussion regarding the selected topics.  The "clearly off topic" restriction served to limit discussion to those matters presented and to thus preserve the forum for its intended purpose.  The Court notes that while the "clearly off topic" restriction no longer appears in the amended Social Media Comments Policy, the limitation persists in that commenters are only encouraged to "submit[ ] . . . comments and questions regarding the posted topics."  Df. Exh. 2.

        In sum, Plaintiff's comment did not comport with the purpose of the forum, and the restriction justifying its removal was both viewpoint neutral and reasonably related to the purpose of the forum.  Accordingly, Defendant did not violate Plaintiff's First Amendment rights by removing the comment.

This leaves one loose end.  Plaintiff's Complaint contends that the "clearly off topic" limitation is itself unconstitutionally vague.  Am. Compl. [Dkt. 16] ¶ 17.  Plaintiff at no point raised or supported this argument in briefing or at trial.  The Court finds the contention to be without merit.  The requirement that participants in a limited public forum stick to a prescribed topic is simply not the sort of ambiguous, sweeping speech restriction subject to challenge under the overbreadth doctrine.  *See Hardwick ex rel. Hardwick v. Heyward*, 711 F.3d 426, 441 (4th Cir. 2013).

Moreover, the Fourth Circuit has observed that "'discretionary access is a defining characteristic of the nonpublic forum," and that this "suggests that more official discretion is permissible" where limited public forums are concerned.  *Child Evangelism Fellowship of MD, Inc.*, 457 F.3d at 387 (quoting *Griffin v. Sec'y of Veterans Affairs*, 288 F.3d 1309, 1324 (Fed. Cir. 2002)).  The limited public forum at issue was opened for the purpose of moderated discussion on selected topics – a purpose which presupposes a degree of discretion.  The Court notes that failure to effectively moderate a public discussion may be as deleterious to dialogue in such a forum as censorship.  *Cf. Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 281 (3d Cir. 2004) (noting that the First Amendment permits, and may in some cases even require, a government entity conducting a

17

public meeting to stop a "speaker . . . try[ing] to hijack the proceedings").  This may in fact be a problem now facing Defendant's Facebook page; since Plaintiff has again begun posting "quite often" on that page, Plaintiff testified that "[m]any fewer comments appear" from other people.  Tr. 89-90.

In light of the above, the Court finds and concludes that Defendant did not violate Plaintiff's First Amendment rights by removing his comment from the official Loudoun County Commonwealth's Attorney Facebook page.

**B. Defendant is entitled to qualified immunity with respect to his decision to block Plaintiff from further posting on the Loudoun County Commonwealth's Attorney Facebook Page.**

Qualified immunity serves to shield government officials from individual liability for civil damages where their actions do not violate clearly established law.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  In evaluating whether Defendant is entitled to qualified immunity, the Court must determine "(1) whether the plaintiff has established the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Raub v. Campbell*, 785 F.3d 876, 881 (4th Cir. 2015), *cert. denied*, 136 S. Ct. 503 (2015).  The order in which to decide these issues is left to the Court's discretion.  *See Pearson*, 555 U.S. at 236.

18

"The operation of [the 'clearly established'] standard
. . . depends substantially upon the level of generality at
which the relevant 'legal rule' is to be identified." *Anderson
v. Creighton*, 483 U.S. 635, 639 (1987).  A right is clearly
established if "[t]he contours of the right . . . [are]
sufficiently clear that a reasonable official would understand
that what he is doing violates that right." *Id.* at 640.  While
precedent need not fit the situation exactly, it is not enough
to simply say that the First Amendment as a whole is clearly
established, ergo any violation of the First Amendment violates
clearly established law.  *See Wilson v. Layne*, 526 U.S. 603, 615
(1999).  Rather, there must be case law sufficiently analogous
to put a reasonable public official on notice.  *See Ashcroft v.
al-Kidd*, 563 U.S. 731, 741 (2011) ("We do not require a case
directly on point, but existing precedent must have placed the
statutory or constitutional question beyond debate.").
Qualified immunity thus "provides ample protection to all but
the plainly incompetent or those who knowingly violate the law."
*Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Court has already determined that Defendant did
not violate the First Amendment by removing Plaintiff's comment
from the Loudoun County Commonwealth's Attorney Facebook page.
The question now is whether it would nonetheless have been
apparent to a reasonable government official that going one step

19

further and excluding Plaintiff from that limited public forum altogether, after Plaintiff repeatedly disregarded its rules, would violate the First Amendment.

Plaintiff has not cited "any cases of controlling authority in [this] jurisdiction at the time of the incident which clearly established the rule on which [he] seek[s] to rely, nor ha[s] [he] identified a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful." *Wilson v. Layne*, 526 U.S. 603, 617 (1999).  The Court has itself been unable to find any such authority.  The most similar cases of which the Court is aware concern individuals banned from recurring public meetings for disruptive behavior. *See, e.g.*, *Barna v. Bd. of Sch. Directors of the Panther Valley Sch. Dist.*, 143 F. Supp. 3d 205 (M.D. Pa. 2015); *Stevens v. Sch. City of Hobart,* No. 2:13-CV-336-PRC, 2015 WL 4870789, at *14 (N.D. Ind. Aug. 6, 2015); *Cyr v. Addison Rutland Supervisory Union*, 60 F. Supp. 3d 536, 548 (D. Vt. 2014); *Brown v. City of Jacksonville, Fla.*, No. 3:06-CV-122-J-20MMH, 2006 WL 385085, at *3–4 (M.D. Fla. Feb. 17, 2006).  In each case, the court expressed misgivings about the constitutionality of a blanket ban on attendance.  These cases, however, do not constitute controlling authority in this jurisdiction, and as the court in *Barna* observed, no consensus

on the issue has arisen among courts sufficient to defeat
qualified immunity.  *See Barna*, 143 F. Supp. 3d at 225-26.

Moreover, the situation at bar is easily
distinguishable from the above cases.  To the extent the courts
in those cases doubted the constitutionality of a flat ban on an
individual's participation in public meetings, they reasoned
that such a ban (1) is not sufficiently tailored because it
"entirely forecloses a means of communication," *Cyr*, 60 F. Supp.
3d at 548, and (2) fails to leave adequate alternative channels
of communication.  *See Barna*, 143 F. Supp. 3d at 221.  Here,
neither concern is warranted.  Once banned from Defendant's
Facebook page, Plaintiff could and did avail himself of Facebook
and other social media platforms to reach his audience.
Plaintiff remained able to read and respond to Defendant's
Facebook posts, and to "tag" individuals so as to notify them of
his comments.  Plaintiff adduced little evidence at trial
tending to show that those alternative channels of communication
were inadequate as compared to commenting directly on
Defendant's Facebook page.  While Defendant's Facebook page was
and remains more popular than Plaintiff's, there is little
evidence to suggest that Plaintiff's comments would have
received significantly more exposure if left on that page given
the affirmative steps required to engage with such comments.
*See*, *e.g.*, Tr. 52.  Moreover, Plaintiff's testimony at trial

strongly suggested that his primary – if not sole – interest in Defendant's Facebook page was as a platform to air his grievances against Defendant and Loudoun County Public Schools. As discussed above, that is not in keeping with the purpose of the limited public forum at issue.

In light of the above, the Court must conclude that any First Amendment right Plaintiff might have had to continue posting comments on Defendant's Facebook page, notwithstanding his repeated violations of the Loudoun County Social Media Comments Policy, was not clearly established at the time Defendant blocked him.  Accordingly, Defendant is entitled to qualified immunity with respect to his decision to do so.

**C. Defendant is entitled to Eleventh Amendment immunity with respect to his decision to block Plaintiff from further posting on the Loudoun County Commonwealth's Attorney Facebook Page.**

The Eleventh Amendment bars lawsuits brought against states.  *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974).  This bar extends to suits seeking civil damages against state officers in their official capacity.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984); *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995) ("Like the state itself, state officers acting in their official capacity are also entitled to Eleventh Amendment protection, because 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's

office,' and '[a]s such, it is no different from a suit against the State itself.'") (quoting *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989)) (alterations in original).  This jurisdictional bar, however, does not extend to local and county authorities.  *See Gray*, 51 F.3d at 431.

Defendant is a constitutional officer of Virginia. *See* Va. Const. art. VII, § 4.  At trial, Plaintiff contended that, notwithstanding that fact, Defendant is not entitled to Eleventh Amendment immunity because his office works closely with Loudoun County, and so Defendant is a *de facto* county official.  This Court and others, however, have held that a suit against a constitutional officer of Virginia is, for Eleventh Amendment purposes, to be treated as a suit against the Commonwealth itself.  *See, e.g.*, *Smith v. McCarthy*, 349 F. App'x 851, 859 n.11 (4th Cir. 2009) (affirming the dismissal of a suit brought against Virginia constitutional officers in their official capacities "as they . . . are afforded immunity by the Eleventh Amendment"); *Savage v. Cty. of Stafford*, Va., No. CIV.A.109CV1328, 2010 WL 1873222, at *4 (E.D. Va. May 4, 2010) ("[T]he Court finds that the Commonwealth Attorney and assistant commonwealth's attorneys, like the sheriff and his deputies, are arms of the state and therefore are entitled to Eleventh Amendment immunity when sued in their official capacities."); *Smith v. McCarthy*, No. CIV.A.3:08CV00036, 2009 WL 50022, at *15

(W.D. Va. Jan. 7, 2009), *aff'd*, 349 F. App'x 851 (4th Cir. 2009) ("As a constitutional officer, a Commonwealth's Attorney is immune from liability [under the Eleventh Amendment]."); *Blankenship v. Warren Cnty.*, Va., 918 F. Supp. 970, 974 n.4 (W.D. Va.), *on reconsideration*, 931 F. Supp. 447 (W.D. Va. 1996) ("The Virginia Constitution creates five state officers which are charged with performing quintessential functions of state government: Commonwealth's Attorney, Treasurer, Commissioner of Revenue, Sheriff, and Clerk of the Court. The court believes that it would be the incredible argument indeed that these officers are not state actors and are therefore not entitled to immunity pursuant to the Eleventh Amendment."); *see also Hussein v. Miller*, 232 F. Supp. 2d 653, 659-60 (E.D. Va. 2002).

Moreover, the Court notes that Defendant's office, while funded in part by Loudoun County, also receives funding from Virginia.  Tr. 95-96.  It therefore appears that any monetary judgement against Plaintiff would be paid, at least in part, by the Commonwealth.  "[A] determination that the state treasury will be liable for a particular judgment is largely, if not wholly, dispositive of entitlement to Eleventh Amendment immunity[.]"  *Gray*, 51 F.3d at 433.  Furthermore, while Defendant's office cooperates and works closely with the Loudoun County government, it is legally autonomous and may choose not to adopt or comply with County policies.  *See* Tr. 117-18.

24

Defendant's office performs a "quintessential function[ ] of state government," *Blankenship*, 918 F. Supp. at 974 n.4, and Defendant's position is a creature of the highest state law. *See* Va. Const. art. VII, § 4.  All of the above counsels in favor of Eleventh Amendment immunity.  *See U.S. ex rel. Oberg v. Pennsylvania Higher Educ. Assistance Agency*, 804 F.3d 646, 650–51 (4th Cir. 2015), *cert. denied*, 137 S. Ct. 617 (2017).  The Court therefore finds and concludes that Defendant is immune from Plaintiff's claim for monetary damages in his official capacity.

### D. Plaintiff has failed to establish damages.

The only evidence Plaintiff submitted with respect to his monetary damages were two receipts reflecting payments for advertising on Facebook totaling $74.  *See* Df. Exhs. 59, 60.  Plaintiff claims that advertising was a necessary expense incurred in an effort to reach the audience for Defendant's Facebook page while he was blocked.  *See* Tr. 57.

It is not clear, however, that this expense was necessary.  Plaintiff could have disseminated – and in fact did disseminate – his message in any number of ways without purchasing advertising.  Moreover, one of the Facebook ads in question was purchased *after* Plaintiff's ability to post comments to Defendant's Facebook page had been restored.  *See* Df. Exh. 60.  While Plaintiff testified that he was not yet

aware that his access had been restored when he began paying for this advertisement, Tr. 57, a social media post by Plaintiff dated the same day Plaintiff began paying for the ad shows that Plaintiff was in fact aware that he had been unblocked. *See* Df. Exh. 14.

"Damages awarded under § 1983 for violations of constitutional rights are ordinarily governed by common law tort principles," including the requirement that any damages awarded to a plaintiff be proximately caused by the defendant. *Kane v. Lewis*, 604 F. App'x 229, 234 (4th Cir. 2015). Even if prompted by the unlawful actions of a government official, any harm attributable to the superseding cause of a plaintiff's subsequent voluntary act is not compensable in a Section 1983 action. *See id.* at 235-36. Here, Plaintiff's decision to pursue a Facebook advertising campaign in response to Defendant's actions constituted a superseding cause. Accordingly, the Court finds and concludes that even if Defendant could be held liable, Plaintiff has established no monetary damages.

### E. Declaratory and injunctive relief would be inappropriate.

Defendant's immunity from claims seeking civil damages does not extend to declaratory and injunctive relief. *See, e.g.*, *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269 (1997); *Bragg v. W. Virginia Coal Ass'n*, 248 F.3d 275, 292 (4th

26

Cir. 2001).  Neither declaratory nor injunctive relief, however, would be appropriate in this instance.

The Declaratory Judgement Act provides that federal courts "may declare the rights and other legal relations of any interested party."  28 U.S.C. § 2201.  The Act is intended to permit an "uncertain party to gain relief from the insecurity caused by a potential suit waiting in the wings."  *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998). "The Fourth Circuit has explained that a declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)).  In short, "declaratory judgments are designed to declare rights so that parties can conform their conduct to avoid future litigation." *Hipage Co. v. Access2Go, Inc.*, 589 F. Supp. 2d 602, 615 (E.D. Va. 2008) (citing *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 593–94 (4th Cir. 2004)).  Where a declaratory judgment would not clarify future legal relations between the parties, the action serves no useful purpose and courts will not entertain it.  *See, e.g.*, *Koon v. Lynch*, No. 4:15-CV2107 DCN,

27

2015 WL 4771881, at *3 (D.S.C. Aug. 12, 2015), *aff'd*, 627 F. App'x 227 (4th Cir. 2015).

Here, it does not appear that a declaratory judgment would serve to clarify future legal relations between Plaintiff and Defendant.  The policy governing Defendant's Facebook page has changed.  As a result, the decision as to whether comments are removed from Defendant's Facebook page no longer rests with Defendant.  Rather, such decisions are now made by the Public Affairs and Communications Division of the Office of the County Administrator.  *See* Df. Exh. 2.  Defendant has testified that he has no plans to abandon the new policy and resume the old, Tr. 116, and the Court has found his testimony on this point credible.

Accordingly, any declaratory judgment entered here would necessarily address only the constitutionality of Defendant's past acts. "Declaratory relief," however, "is reserved for forward looking actions[.]"  *Horvath v. Bank of N.Y.*, N.A., No. 09CV01129, 2010 WL 538039, at *1 (E.D. Va. Jan. 29, 2010), *aff'd*, 641 F.3d 617 (4th Cir. 2011).  Moreover, the mere possibility that Defendant might someday reverse course and re-adopt the old policy does not present "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *MedImmune, Inc. v. Genentech, Inc.*, 549

U.S. 118, 127 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)).  In light of the above, the Court finds and concludes that Plaintiff is not entitled to declaratory relief.

Finally, Plaintiff seeks injunctive relief requiring that Defendant "[h]enceforth . . . follow the Loudoun County Social Media Comments Policy as amended effective November 22, 2016."  Pl. Proposed Findings of Facts and Conclusions of Law [Dkt. 38] at 5.  The Court finds that to enter such an injunction would be similarly inappropriate.

"The purpose of an injunction is to prevent future violations," and the party seeking such relief "must satisfy the court that [prospective] relief is needed." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953).  The Court is not so satisfied.  Here, the conduct giving rise to Plaintiff's suit was Defendant's removal of Plaintiff's comment from his office's Facebook page and his subsequent banning of Plaintiff from that page.  As discussed above, Defendant is no longer capable of taking such action under the new Social Media Comments Policy, and has no intention of returning to the old policy.  *See* Tr. 116.  It is not apparent that Defendant – as opposed to his staff – will play *any* role in the removal of comments or the blocking of individuals from his office's Facebook page in the future.  It therefore seems that Plaintiff's request for

injunctive relief is now moot. *See Pevia v. Wexford Health Source, Inc.*, No. CV ELH-16-1950, 2016 WL 7104814, at *2 (D. Md. Dec. 5, 2016) ("Section 1983 actions seeking injunctive and/or declaratory relief have been declared moot when the practices, procedures, or regulations challenged were no longer in use.").

Moreover, Plaintiff's requested injunction requiring that Defendant "henceforth" adhere to the amended policy now in effect is defective in several respects. First, as the Court noted previously in connection with Plaintiff's Motion for Summary Judgment, *see* Mem. Opp. [Dkt. 35] at 12-13, injunctions that simply require their subjects to follow the law are generally overbroad. *See Lineback v. Spurlino Materials, LLC*, 546 F.3d 491, 504 (7th Cir. 2008) (quoting *Int'l Rectifier Corp. v. IXYS Corp.*, 383 F.3d 1312, 1316 (Fed. Cir. 2004)). An injunction requiring Defendant to follow his own policy suffers from this same defect.

Moreover, the requirement that Defendant "henceforth" maintain the present policy indefinitely is something Plaintiff has no legal grounds to require of Defendant. While Defendant has opened a limited public forum by adopting the Social Media Comments Policy, he remains free to modify or close that forum as he sees fit. *See Sons of Confederate Veterans, Virginia Div. v. City of Lexington, Va.*, 894 F. Supp. 2d 768, 773 (W.D. Va. 2012), *aff'd*, 722 F.3d 224 (4th Cir. 2013). To require that

30

Defendant refrain from amending his policy would not be an appropriate remedy.  Among other things, it would needlessly constrain the manner in which Defendant interacts with his constituents with relatively little corresponding benefit to Plaintiff.  Plaintiff has therefore failed to demonstrate "that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).  In sum, the Court finds and concludes that injunctive relief is not warranted in this case.

### III. Conclusion

For the reasons stated above, the Court finds and concludes that (1) Defendant did not violate the First Amendment by deleting Plaintiff's Facebook comment; (2) Defendant is entitled to qualified immunity in his individual capacity with respect to his decision to block Plaintiff from further posting on the Loudoun County Commonwealth's Attorney Facebook page; (3) Defendant is entitled to Eleventh Amendment immunity with respect to Plaintiff's claim for damages against him in his official capacity; (4) Plaintiff has failed to establish any damages; (5) Neither declaratory nor injunctive relief is warranted in this case.  Accordingly, the Court will render a verdict and enter judgment in Defendant's favor.

An appropriate order will issue.

_____
                                        /s/
March 28, 2017                      James C. Cacheris
Alexandria, Virginia          UNITED STATES DISTRICT COURT JUDGE